# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOPPAN INTERAMERICA, INC., <br>                               Plaintiff, <br><br> v. <br><br> WHALEN LLC, <br>                               Defendant. | Case No. 23-cv-1948-BAS-BJC <br><br> **ORDER** <br> 1. **DENYING MOTION FOR COSTS (ECF No. 29)** <br> 2. **GRANTING MOTIONS TO SEAL (ECF Nos. 33, 36)** |

      Toppan Interamerica, Inc. ("Toppan") specializes in designing, printing, and supplying decorative papers and films for various surfaces, including furniture. Whalen LLC ("Whalen") designs furniture and manufactures that furniture at overseas factories. In this case, Toppan accuses Whalen of infringing on six of Toppan's registered wood-grain design copyrights, which Whalen has allegedly used in its furniture designs. Six weeks after instituting the instant case, Toppan also filed a complaint with the International Trade Commission ("ITC"), claiming Whalen was importing furniture products infringing four of the six same copyrights. The ITC began an investigation in early January 2024, and Whalen requested, and was granted, a stay of the instant action while the ITC investigation was pending. During the ITC proceedings, the parties exchanged written discovery, Whalen conducted one deposition, and the parties briefed one motion to compel before Toppan withdrew its complaint before the ITC, and the ITC investigation ended on

April 26, 2024. The parties are in the process of agreeing to use the discovery from the ITC proceeding in the instant proceeding.

Upon the parties' joint motion after the ITC proceeding closed, this Court lifted the stay in this proceeding. Whalen subsequently filed a Motion for Costs under Federal Rule of Civil Procedure 41(d) (ECF No. 29 ("Motion" or "Mot.")), seeking reimbursement for the costs it incurred during the ITC investigation and arguing that Toppan's actions were harassing. Toppan opposed, claiming Rule 41(d) is inapplicable because the ITC is not a "court" and its investigation is not a "previous action"; Toppan also asserted it had valid reasons for initiating and then terminating the ITC proceedings. (ECF No. 35 ("Resp.").) In connection with the Motion, Toppan moved to seal portions of its Response to Whalen's motion for costs (ECF No. 36), and Whalen filed an affidavit in support of sealing (ECF No. 41). Whalen has also moved to seal portions of its Answer to the Complaint. (ECF No. 33.)

The Court finds the motions suitable for determination on the papers submitted and without oral argument. Fed. R. Civ. P. 78(b); CivLR 7.1(d)(1). For the reasons set forth below, the Court **DENIES** Whalen's Motion for Costs (ECF No. 29), **GRANTS** Whalen's Motion to Seal (ECF No. 33), and **GRANTS** Toppan's Motion to Seal (ECF No. 36).

# I. LEGAL STANDARDS

## A. Motion to Seal

When it comes to court records, courts adhere to a strong presumption in favor of public access. *See, e.g.*, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." (citation omitted)); *see also Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) ("Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point."); *see also Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) ("The presumption of access is based on the need for

federal courts, although independent . . . to have a measure of accountability and for the public to have confidence in the administration of justice." (citation omitted)).

Thus, a party seeking to seal a judicial record bears the burden of overcoming this strong presumption of access. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). The heft of that burden depends on the type of motion tied to the documents sought to be sealed. When the related information is more than "tangentially related to the merits of the case," the more rigorous "compelling reasons" standard applies. *Chrysler*, 809 F.3d at 1096–98, 1102. If the related information is not more than tangentially related to the merits of the case, the more relaxed "good cause" standard applies. *Id.* at 1096–98.

### B. Motion for Costs

The purpose of Rule 41(d) is to protect defendants from financing duplicitous and vexatious litigation. *Anders v. FPA Corp.*, 164 F.R.D. 383, 387 (D.N.J. 1995), *aff'd*, No. CIV. 93-2830, 1995 WL 785109 (D.N.J. Apr. 24, 1995). The rule dictates:

> If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:
> (1) may order the plaintiff to pay all or part of the costs of that previous action; and
> (2) may stay the proceedings until the plaintiff has complied.

Fed. R. Civ. P. 41(d).

To obtain an award of costs under this rule, the moving party must establish that: (1) the plaintiff's previous action was dismissed; (2) a second action was commenced that is based upon or includes the same claim against the same defendant; and (3) there are costs and attorneys' fees incurred by the defendant in the prior action that will not be useful in the newly filed litigation. *Siepel v. Bank of Am., N.A.*, 239 F.R.D. 558, 563 (E.D. Mo. 2006), *aff'd*, 526 F.3d 1122 (8th Cir. 2008). The moving party need not show bad faith in order to succeed in a Rule 41(d) motion. *Id.*

## II. ANALYSIS

### A. Motion to Seal

The parties bring two motions to seal before the Court. (ECF Nos. 33, 36.) Because a different standard applies to each motion, the Court shall analyze each motion in turn.

#### 1. Whalen's Answer (ECF No. 33)

Because an answer is more than tangentially related to the merits of the case, the Court applies the compelling reasons standard to Whalen's motion to file portions of its Answer under seal. (ECF No. 33.) Under this standard, "the [moving] party must articulate compelling reasons [to seal a document] supported by specific factual findings." *Kamakana*, 447 F.3d at 1178 (citation omitted). These compelling reasons must "outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Id.* at 1178–79 (citation omitted).

Here, Whalen seeks to seal the same information the Court already sealed in the Second Amended Complaint. (*See* ECF No. 31.) Accordingly, Whalen has already articulated compelling reasons to seal the information, and its motion to seal the same information in its Answer is therefore **GRANTED**. (ECF No. 33.) Whalen is **ORDERED** to file a public version of its Answer, redacting only the information that requires sealing, on the docket by **no later than January 21, 2025**.

#### 2. Toppan's Opposition to Whalen's Motion for Costs (ECF No. 36)

Here, the Court applies the good cause standard because a motion under Rule 41(d) is not more than tangentially related to the merits. *See, e.g.*, *Cortina v. Wal-Mart Stores, Inc.*, No. 13-CV-02054-BAS-DHB, 2016 WL 4556455, at *1 n.1 (S.D. Cal. Sept. 1, 2016) (finding a motion for sanctions was not more than tangentially related to the merits of the case and applying the good cause standard).

Good cause requires a "particularized showing," *In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012), supported by "specific examples or articulated reasoning," *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quotation omitted). That a document is designated confidential

pursuant to a protective order is of little weight when it comes to sealing court filings. *See San Jose Mercury News, Inc. v. U.S. Dist. Ct.(Saldivar)*, 187 F.3d 1096, 1103 (9th Cir. 1999) (describing blanket protective orders as "inherently subject to challenge and modification"). By nature, protective orders are overinclusive, *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 475–76 (9th Cir. 1992), because prior to signing, the judge typically does not have the opportunity to analyze whether any particular document should be sealed, *see San Jose Mercury News*, 187 F.3d at 1103; *see also Foltz*, 331 F.3d at 1133 (noting that parties receiving a blanket protective order in discovery have typically not made a "good cause" showing to get it). Whether a document designated as confidential pursuant to a protective order should be sealed must therefore usually be determined *de novo*. *See Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.*, 340 F. Supp. 2d 1118, 1121 (D. Or. 2003).

Toppan moves to seal its Opposition to Whalen's Motion for Costs (ECF No. 33), and Whalen has filed an affidavit in support of sealing (ECF No. 41). In its motion to seal, Toppan describes the information it seeks to seal as consisting of Whalen's response to Toppan's cease and desist letter, as well as portions of its own Opposition brief. (ECF No. 36 at 1.) The information at issue includes sales information as well as information regarding Whalen's ownership (which the Court has already sealed (*see* ECF No. 31)). In its Motion to Seal, however, Toppan "opposes sealing this information as it appears to be outdated or replicated in records that appear online." (ECF No. 36 at 2.) Toppan provides no further support for its opposition through either caselaw or attachment of the referenced online records.

In contrast, in support of sealing Toppan's Opposition and Whalen's response to Toppan's cease and desist letter, Whalen supplies an affidavit from its attorney, Baraa Kahf ("Kahf Affidavit"). (ECF No. 41.) Kahf cites potential competitive disadvantage as reason

to seal portions of Toppan's Opposition.[1] Specifically, Kahf notes that the letter "contains information identifying Whalen's vendors and detailing Whalen's relationship with them, including the volume and purchase price of the goods." (*Id.*) Kahf maintains that Whalen keeps such information confidential to "avoid . . . competitive disadvantage." (*Id.*) In addition to identifying Whalen's vendors, Whalen is concerned that the letter contains information about how Whalen selects its product designs, as well as its corporate structure and affiliate relationships. (*Id.* at 2–3.)

The Court is unconvinced that publishing the sales and inventory status of Whalen's products as of August 14, 2023, more than a year ago, puts Whalen at a competitive disadvantage. (*Id.* at 3.) However, identification of Whalen's vendors and its corporate structure provides good cause to seal the letter. Accordingly, Toppan's Motion to Seal is **GRANTED**. (ECF No. 36.)

### B.     Motion for Costs

Whalen moves for an award of the costs it incurred defending itself in the ITC investigation initiated on the basis of Toppan's complaint. (ECF No. 29.) In addition to the costs of litigation, Whalen moves for the attorney's fees it incurred in the same proceeding. It is undisputed that Toppan's ITC complaint alleged that Whalen was infringing on some of the the same patents as are the subject of the instant litigation, and that the ITC proceeding was eventually dismissed. However, the parties dispute whether the ITC proceeding was "an action in any court," and whether that proceeding constituted

---

[1] The Kahf Affidavit also asserts that the attorneys for both parties "deemed these communications as subject to Federal Rule of Civil Procedure 408 in their respective letters." (ECF No. 41 at 2.) Assuming Kahf meant to write "Federal Rule of Evidence" and not "Federal Rule of Civil Procedure," then the Kahf Affidavit is referencing the rule of evidence that prohibits the use of compromise offers and negotiations to prove or disprove the validity or amount of a disputed claim. Fed. R. Evid. 408. Assuming the Kahf Affidavit is therefore attempting to make an evidentiary objection, the Court simply notes that evidentiary objections address the question of what evidence the factfinder may review, not whether it may be filed publicly on the docket. Accordingly, such an objection is more appropriately made when the Court reaches the merits of the case and is therefore **DENIED** without prejudice at this time.

a "previously dismissed action" for the purposes of Rule 41(d), given that Toppan filed this case before initiating the ITC investigation.

### 1. Rule 41(d) Applies to ITC Proceedings

Toppan argues that the ITC proceeding was not an "action in any court" as understood by Rule 41(d) and therefore this Court may not award costs under the Rule. In this Court's reading of the statute, however, the phrase "action in any court" includes proceedings such as the ITC investigation at issue in this case.

Courts apply the same rules of interpretation to the Federal Rules of Civil Procedure as they do to statutes. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 376 (2013) (interpreting Fed. R. Civ. P. 54(d)(1)). When it comes to interpreting individual words in a statute, the term "'any' [is taken] as an indication of intent for the statute 'to sweep broadly to reach all varieties of the item referenced.'" *Paulo v. Agence France Presse*, No. 21CIV11209JLRSLC, 2023 WL 7691694, at *7 (S.D.N.Y. Oct. 17, 2023) (quoting *Cohen v. J.P. Morgan Chase Co.*, 498 F.3d 111, 117 (2d Cir. 2007)) (determining that Rule 41(d)'s conception of "court" excludes foreign courts), *report and recommendation adopted sub nom. Paulo v. Agence France-Press*, No. 1:21-CV-11209 (JLR) (SLC), 2024 WL 35973 (S.D.N.Y. Jan. 3, 2024). "Court" is also a term that statutes wield freely. The Second Circuit has acknowledged that "[t]he term is often employed in statutes otherwise than in its strict technical sense." *In re Fid. Mortg. Invs.*, 690 F.2d 35, 38 (2d Cir. 1982). To determine whether a body is acting as a "court," the analysis looks to how the body in question functions. *See id.* (determining that the Judicial Conference was acting as an auxiliary of the courts because its functions were "integrated" with those of the courts); *see also Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 226 (1908) (defining a "judicial inquiry" as one that "investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist").

Applying these rules of statutory interpretation, this Court finds that an ITC investigation is a "variet[y]" of a court for the purposes of Rule 41(d). *Paulo*, No. 1:21-CV-11209 (JLR) (SLC), 2023 WL 7691694, at *7. ITC proceedings have functional

similarities to a traditional court. For one, the proceedings are structured so as to preserve the independence of the tribunal. ITC proceedings are run by Administrative Law Judges ("ALJs") who conduct the trial phase of Commission investigations. 19 U.S.C. § 1337. These ALJs receive absolute immunity on par with federal judges. *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) ("The . . . administrative law judge [has] been afforded absolute immunity."). Indeed, the Supreme Court has held that ALJs operating pursuant to the Administrative Procedure Act ("APA"), as ITC ALJs do, are "functionally comparable" to federal judges. *Butz v. Economou*, 438 U.S. 478, 513 (1978). Moreover, ITC investigations include motions practice, rigorous discovery, a trial, and are appealable to the Federal Circuit. 19 U.S.C. § 1337. Therefore, their functions are "integrated" with those of the courts. *In re Fid. Mortg. Invs.*, 690 F.2d at 38.

Further, other courts have considered similar proceedings before the Patent Trial and Appeal Board ("PTAB") to be an action in a court for the purposes of Rule 41(d). *See, e.g.*, *ILC Dover LP v. FloodBarrier, Inc.*, No. 20-21350-CIV, 2020 WL 9935650, at *3 (S.D. Fla. July 15, 2020) (rejecting a defendant's Rule 41(d) motion for costs on the grounds that the defendant was the party to bring the PTAB proceeding, not that the PTAB proceeding was not a court or action for the purposes of Rule 41(d)). Like ITC investigations, the APA applies to PTAB proceedings. Like ITC investigations, the outcomes of PTAB proceedings are appealable to the Federal Circuit. 35 U.S.C. § 141.

Toppan argues for a narrower reading of this broad Rule, however. It cites to *Federal Trade Commission v. Endo Pharmaceuticals Incorporated* as an example of a court refusing to consider an adversarial proceeding before an administrative agency to be an "action" as understood by Rule 41(d). (Resp. at 15 (citing *Fed. Trade Comm'n v. Endo Pharms. Inc.*, No. 16-CV-01440-PD, 2017 WL 4583802, at *3 (E.D. Pa. Aug. 21, 2017) (holding that because the Federal Rules of Civil Procedure provide a definition for "action," applying a different definition would "drain the word 'action' of independent meaning" (citation omitted))).) Indeed, the Federal Rules of Civil Procedure define

1  "action" as "the civil action." Fed. R. Civ. P. 2. The Rules further state that "[a] civil
2  action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3.

3        Respectfully, the Court is not persuaded by its fellow district court's reasoning.
4  Including an ITC investigation under the Federal Rules of Civil Procedure's definition of
5  "action" does not drain the word of independent meaning and is instead consistent with
6  other courts' analysis of the Rule as it pertains to similar proceedings. Moreover, Rule 1
7  of the Federal Rules of Civil Procedure supports an expansive reading of the rules, directing
8  that the rules should be construed "to secure the just, speedy, and inexpensive
9  determination of every action and proceeding." As demonstrated in the foregoing analysis,
10 an ITC proceeding contains meaningful functional similarities with the federal courts and
11 is therefore an action in a court for the purposes of Rule 41(d).

### 2. The ITC Proceeding Was Not a Previously Filed Action

13       Rule 41(d) applies to situations where a plaintiff has "previously dismissed an action
14 in any court" and then files another action based on or including the same claim against the
15 same defendant. By the plain language of the Rule, the ITC proceeding is not a previously
16 dismissed action and therefore the Rule does not apply here. Toppan filed the instant
17 action, then filed the ITC complaint, and then *Whalen* (not Toppan) requested a stay of
18 instant action, which remained in place until Toppan withdrew its ITC complaint. Simply
19 put, the course of litigation in this dispute does not meet Rule 41(d)'s plain language
20 requirement that the prior proceeding precede the instant case.

21       Whalen makes the point that courts do not always follow this sequencing
22 requirement. While it is true that in particular cases courts have not always applied Rule
23 41(d)'s requirement that the prior proceeding be dismissed before the subsequent
24 proceeding is filed, the forum-shopping and gamesmanship present in such exceptional
25 cases is not present here.

26       For instance, in *Esquivel v. Arau*, the district court held that Rule 41(d) still entitled
27 the defendant to costs even where the plaintiff filed the subsequent action before she had
28 dismissed the first action. 913 F. Supp. 1382, 1387 (C.D. Cal. 1996). The plaintiff did not

dismiss her first action until after the defendants wrote a "detailed and comprehensive motion to dismiss." *Id.* at 1386. Once the defendants had filed that motion to dismiss, the plaintiff voluntarily dismissed her first action. *Id.* The district court in the subsequent action determined that because the plaintiff's initial choice of forum "was questionable, to say the least," she had wasted the defendants' resources in the first action without "a persuasive explanation for the course of litigation," and the defendants were entitled to recover their costs in defending against that first action. *Id.* at 1387–88.

Whalen also cites to *Holt v. Kormann*, where the two actions were dismissed at virtually the same time. No. SACV 11-01047 DOC, 2012 WL 5829864, at *2 (C.D. Cal. Nov. 15, 2012). The district court rejected the argument that the second proceeding, filed while the first was still pending, was not a subsequent proceeding. Instead, the court held that such an interpretation would contravene the purpose of Rule 41(d) to prevent undue prejudice to a defendant from unnecessary or vexatious litigation. *Id.* at *5. The court further found that the plaintiff's litigation strategy was vexatious and duplicative because the plaintiff "forced [the defendant] to simultaneously litigate the [first] action on appeal in regards to proper service and the [second] action in regards to his claims' merits." *Id.* Because the court found the plaintiff's course of litigation was needless, it awarded costs to the defendant.

Finally, Whalen cites to *Nielson v. Union Bank of California, N.A.*, where the court held that Rule 41(d) applied when the plaintiffs commenced the second action just prior to dismissing the first for virtually identical claims while motions to dismiss were pending. No. CV 02-06942 MMM (CWx), 2003 WL 27374136, at *2 (C.D. Cal. Mar. 31, 2003). In *Nielson*, the plaintiffs had represented that the first action would be consolidated with the second, but instead dismissed the first action while proceeding with the second. *Id.* The court found that the "[p]laintiffs clearly initiated the instant action only because they planned soon thereafter to dismiss [the first]." *Id.* at *3. As such, the court refused to find the second proceeding was not a subsequent proceeding when the course of litigation "effected the same result as if plaintiffs had dismissed the first action and thereafter filed

the second." *Id.* Because the defendants' only chance of redress for the cost of defending themselves in the two actions was Rule 41(d), the court construed Rule 41(d) in accordance with Rule 1 to secure a just result, and applied Rule 41(d) to provide redress to the defendants. *Id.*

Unlike in the above cases, Whalen points to no evidence of needless litigation here. Therefore, the Court finds that unlike in *Nielson*, *Holt*, or *Esquivel*, applying Rule 41(d) to supply costs for a later-initiated ITC proceeding (rather than a prior proceeding) would not secure a just result in this case. Toppan's complaint to the ITC does not appear to be the result of gamesmanship or forum-shopping. Toppan is unequivocal that its "primary objective in the ITC was to stop Whalen from importing infringing goods." (Resp., Meckes Decl. ¶ 12.) The day after it initiated the instant action against Whalen, Toppan informed Whalen via email that it had commenced suit in the district court and planned to ask the ITC "to initiate an investigation and issue an exclusion order for Whalen's infringing products." (Resp., Ex. C.) The same email states that the goal of the litigation is to "put a stop to Whalen's infringement." (*Id.*) Whalen offers no evidence to contradict these statements or support its argument that Toppan undertook the ITC litigation needlessly. Accordingly, the Court has no grounds to bend Rule 41(d)'s requirement that costs only be awarded for prior litigation; Whalen's Motion for Costs must fail.

### 3. Awarding Costs Is Unnecessary

Toppan's explanation for its litigation choices is persuasive. Even if the ITC proceeding were a subsequent proceeding under Rule 41(d), there is no cause to award costs here. Courts award costs where the purposes of Rule 41(d) are at play—to prevent "vexatious litigation" and "forum shopping." *Rogers v. Wal–Mart Stores, Inc.*, 230 F.3d 868, 874 (6th Cir. 2000). There is little to no evidence that Toppan's actions rose to the level of either vexatious litigation or forum shopping here. Instead, Toppan successfully meets its burden of showing "a persuasive explanation for its litigation choices" and thus would not owe Whalen litigation costs for the ITC proceeding even if it were a prior

proceeding. *Whole E Nature, LLC v. Wonderful Co., LLC*, No. 17CV10-LAB (KSC), 2017 WL 4227150, at *4 (S.D. Cal. Sept. 22, 2017) (citing *Esquivel*, 913 F. Supp. at 1388).

In *Wang Laboratories*, the court similarly refused to award costs where it found that the plaintiff had a persuasive reason to dismiss a prior ITC proceeding. *Wang Lab'ys Inc. v. Mitsubishi Elecs. Am. Inc.*, No. CV 92-4698 JGD, 1993 WL 574424, at *13 (C.D. Cal. Mar. 24, 1993). The district court in the subsequent action found the plaintiff's explanation for the course of litigation was reasonable because the remedies offered by a district court are distinct from those offered by the ITC. Only the district court could provide both damages for past harm as well as an injunction to prevent future harm. *Id.*

Here, Toppan also offers a persuasive explanation for its litigation choices. It pursued Whalen in an ITC investigation because it could not determine whether Whalen was continuing to import the accused products. (Resp., Meckes Decl. ¶¶ 21–24.) The ITC forum allowed Toppan to pursue this information swiftly, because the ITC sets "tight response times" for discovery. (Reply at 9.) If Toppan had discovered Whalen was continuing to import the accused products, it could have sought an exclusion order from the ITC, thereby excluding the products from the United States. However, the ITC discovery in February 2024 revealed Whalen was no longer importing a quantity of the accused products that Toppan found offensive. (*See* Resp., Meckes Decl. ¶ 14 ("[I]n 2024 [Whalen] had purchased a commercially insignificant amount of infringing decorative paper, which also appeared to represent a precipitous decline from previous years' volumes for the same period of time.").) By March 2024, after reviewing Whalen's transaction records, Toppan's team "concluded that Whalen had almost certainly ceased manufacturing and importing the products accused of infringing sometime in early 2024 at the latest." (*Id.* ¶ 21.) Thereafter, Toppan withdrew its ITC complaint, instead pursuing damages and a permanent injunction before this Court. (*Id.* ¶¶ 22–24.) In so doing, Toppan "avoided unnecessary litigation." *CIVCO Med. Instruments Co. v. Protek Med. Prod., Inc.*, 231 F.R.D. 555, 564 (S.D. Iowa 2005) (refusing to award costs under Rule 41(d) where the

plaintiff's decision to voluntarily dismiss the prior case "avoided unnecessary litigation" about personal jurisdiction).

Given Toppan's litigation goals and the course of litigation, Toppan's explanation of its litigation choices in pursuing and then dropping the ITC proceeding are persuasive.

<u>The instant litigation is minimally duplicative</u>.  Rule 41(d) also exists to help defendants avoid incurring "duplicative legal expenses" by defending themselves in multiple identical actions.  *Esquivel*, 913 F. Supp. at 1388 n.10 (citation omitted).  From the evidence before this Court, it does not appear Whalen will have to perform more than a minimal amount of duplicative work in litigating this action.

All signs indicate the parties are attempting to avoid duplicative legal expenses by working toward an agreement to use the discovery from the ITC proceeding in the instant proceeding.  (Resp., Meckes Decl. ¶ 23 ("Whalen's counsel asked if the parties could agree to use the discovery that had been exchanged in the ITC in the district court case.  I informed Whalen's counsel that TIA would agree to do so and later confirmed this conversation in writing.").)  Beyond discovery, the parties only litigated a two-page motion to compel before the ITC.  Such additional work is minimal and therefore does not weigh in favor of granting costs.

Still, Whalen asserts that participation in the ITC proceeding forced it to do work beyond that required by the instant action.  Whalen argues that the ITC action addressed issues irrelevant to the district court proceeding—"such as the ITC's domestic industry requirement." (Reply at 9.)  However, Whalen does not discuss whether and to what extent the ITC discovery and any briefing dealt with the ITC's requirement that the complainant show that a domestic industry exists or is in the process of being established.  Whalen also argues that an ITC-exclusive issue might be the importation of the accused products (Mot. at 8), but there is every indication that whether Whalen actually imported the accused products would be an issue in this proceeding as well.

Further, Whalen submits no evidence that its work done before the ITC proceeding is duplicative of work to be done here. Only Toppan presents evidence of the work completed before the ITC. Toppan's counsel represents that

> [o]ver the course of the three-months of proceedings, the parties exchanged written discovery requests, met and conferred a few times, and Whalen took a single deposition. Whalen produced a total [of] 2,565 documents (8,835 pages), and TIA produced 401 documents (1,374 pages). TIA did not take any depositions. Other than a two-page motion to compel third-party Japanese nationals to give depositions in the United States (which was not resolved), there was no motion practice before the ITC.

(Resp., Meckes Decl. ¶ 25.) If the parties agree to use this discovery in the instant action, then the work in the ITC proceeding will not be duplicative of the work required here, apart from the short motion to compel. Accordingly, this would weigh against a grant of costs.

### 4. The Court Shall Not Exercise Its Inherent Authority

Although district courts may award costs for prior administrative proceedings under their inherent authority, there is no cause to do so here. *See Realtime Adaptive Streaming LLC v. Netflix, Inc.*, 41 F.4th 1372, 1380 (Fed. Cir. 2022) (affirming that it is within a district court's discretion to award fees in a related PTAB proceeding). Moreover, Whalen has not requested such relief, although some of Whalen's arguments pertain to this power rather than Rule 41(d)'s requirements. For instance, Whalen argues it should be awarded costs because the burdens of ITC discovery are higher than those of a federal district court—this is not an argument that sounds within a Rule 41(d) analysis, which does not ask courts to compare and contrast the relative burdens of each forum. Even if Whalen had asked the Court to award costs under its inherent authority and made this same argument, the argument must fall.

First, Whalen notes that the ITC has a higher interrogatory limit than the district court, which "allowed Toppan to litigate far more factual issues than it will be able to litigate in district court." (Mot. at 8 (*comparing* 19 C.F.R. § 210.29(a) (setting an interrogatory limit of 175), *with* Fed. R. Civ. P. 33(a)(1) (setting an interrogatory limit of

25))).) This is not necessarily true. Parties in district court proceedings may submit supplemental interrogatories so long as those interrogatories are proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1)–(2). So long as the interrogatories are timely requested and proportional to the needs of the case, the number of factual issues subject to discovery is not limited by the Federal Rules of Civil Procedure.

Second, Whalen argues that the tight discovery turnaround times of an ITC proceeding required it to finance a larger litigation team than required in district court proceedings. (Reply at 9.) While this may weigh in favor of an award of costs if Whalen had shown Toppan's litigation choices were made to be vexatious, Whalen has not done so here. As already noted, there is no evidence that Toppan engaged in any misconduct by pursuing both an ITC investigation and a district court proceeding. *Cf. Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1369 (Fed. Cir. 2013) (upholding a district court's award of costs for an ITC proceeding under the district court's inherent authority where the party's misconduct "was pervasive enough to infect the entire litigation" (citation omitted)).

Accordingly, the Court shall not exercise its inherent authority to award costs.

### III. CONCLUSION

In summary, the Court **GRANTS** Whalen's and Toppan's motions to seal. (ECF Nos. 33, 36.) Whalen is **ORDERED** to file a public version of Whalen's Answer on the Court's docket **no later than January 21, 2025**. Whalen's Motion for Costs is **DENIED**. (ECF No. 29.)

**IT IS SO ORDERED.**

**DATED: January 13, 2025**

Hon. Cynthia Bashant
United States District Judge

- 15 -

23cv1948